IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 15, 2002

## STATE OF TENNESSEE v. WILLIAM MARVIN BROWN

**Appeal from the Circuit Court for Marshall County**
**No. 14485     Charles Lee, Judge**

───────────

**No. M2001-02287-CCA-R3-CD - Filed December 18, 2002**

───────────

The defendant, William Marvin Brown, appeals as of right his conviction by a Marshall County Circuit Court jury for child rape, a Class A felony, and the resulting twenty-three-year, nine-month sentence. He contends that the evidence is insufficient to identify him as the perpetrator of the crime and that the trial court erroneously failed to apply mitigating factors, which resulted in an excessive sentence. We affirm the judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOE G. RILEY and JAMES CURWOOD WITT, JR., JJ., joined.

Merrilyn Feirman, Nashville, Tennessee (on appeal); Donna Leigh Hargrove, District Public Defender; and Andrew Jackson Dearing, III, Assistant District Public Defender, for the appellant, William Marvin Brown.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On September 21, 2000, the defendant had been living with the victim for one week. The victim, who was four years old at trial, was five days away from her fourth birthday on September 21, 2000. She testified that she lived in a trailer with Marvin Brown; her mother, Krystal Gorman; and Johnny Pearson. She said that she and Marvin were alone in the trailer watching cartoons and that Marvin was wearing a gown. She said that Marvin grabbed her arm and pulled her into the bathroom. She said that she sat on the side of the bathtub and that Marvin stood beside her and was naked. She said that Marvin stuck his "ding-a-ling" in her mouth, that it went past her lips and teeth, and that it choked her. She said that Marvin's "ding-a-ling" was located between his legs. She said that while it was in her mouth, Marvin moved it in and out and that something came out of it. She

said that the substance tasted bad and that she spat it out in the sink. She said that Marvin told her not to tell. The victim said that she did not see Marvin Brown in the courtroom but that Marvin Brown was the only Marvin who had lived with her.

Charlotte Pearson, the victim's grandmother, testified that in September 2000, she worked as a general manager at the Richland Inn from 7:00 a.m. to 3:00 p.m. Her daughter, Krystal Gorman, was an assistant manager and worked from 3:00 p.m. to 11:00 p.m. She and her husband, Joe Pearson, lived in a trailer next door to the victim. In September 2000, she and her daughter were sharing a car. During this time, Krystal would bring the victim to the Inn at 3:00 p.m., and she would drive the victim to her trailer. She said that this routine was altered on only one occasion. On September 21, 2000, Krystal left the victim at home with the defendant when she came to work. Mrs. Pearson said that she ran an errand on the way home and arrived at the trailer park at 3:45 p.m. She said that as she got out of her car, the victim flung open the door to her daughter's trailer and ran out to her yelling "Mammy, Mammy, please let me come to your house right now." Once inside Mrs. Pearson's trailer, the victim did not want to get down from Mrs. Pearson's lap. Mrs. Pearson testified that this was unusual because the victim usually went straight to her toys and began playing. She said that the defendant and Blair Keller, the defendant's girlfriend, came to her trailer and stayed for thirty minutes to one hour. She said the victim remained on her lap the entire time the defendant was there.

Mrs. Pearson testified that after September 21, 2000, the victim wet herself at her birthday party, although she had been toilet trained for nearly two years and had not had any accidents for over one and one-half years. She said that the victim also began to exhibit some behavior problems and would not listen to instructions from Mrs. Pearson. She said that the victim slapped her, knocking her glasses off, and said that she hated Mrs. Pearson, which she had never done before. Mrs. Pearson said that before September 21, the victim had loved the defendant and had always wanted to be around him but that after that day, the victim did not want to be around him. She said that she based this conclusion upon the victim's refusing to have her photograph made with the defendant at her birthday party.

Mrs. Pearson testified that the defendant and Johnny Pearson, her daughter's boyfriend, moved out of her daughter's trailer on the evening of October 31, 2000. Three or four days later, her daughter and the victim moved into her trailer. She said that on November 7, 2000, she was bathing the victim when they had a conversation about the offense. She said that she did not question the victim at the time but listened to what the victim had to say. She said that when her daughter came home from work, Mrs. Pearson told her that she needed to talk to the victim. She said she was present when Ms. Gorman spoke with the victim at 11:15 p.m. She said Ms. Gorman took the victim to the police department the next day. She said the victim last saw the defendant on November 17, 2000. She said that she and the victim were in her car when the victim saw the defendant walking down the street and became almost hysterical.

Mrs. Pearson identified the defendant as Marvin Brown. She said that when she first entered the courtroom she did not recognize the defendant because his hair was cut and he no longer had the

little goatee he use to wear. She identified two photographs of the defendant as he appeared on September 21, 2000. The photographs show the defendant's hair to be shaved on the sides and back with a nearly chin-length shock of hair hanging from the top of his head. She said that the victim always called the defendant Marvin.

On cross-examination, Mrs. Pearson testified that her daughter's trailer had two bedrooms and that the defendant slept in the front bedroom and that the victim slept in the back bedroom in a separate bed from her daughter and Johnny Pearson. She acknowledged that Johnny Pearson spent time with the victim and took her with him to pick up Ms. Gorman. She said that he would pick up the victim around 9:00 or 9:30 p.m. and watch her until time to get Ms. Gorman at 11:00 p.m. She said that at the end of September, Ms. Gorman was the only person in that household who was working. She said that she did not see any conflicts between Ms. Gorman and the defendant or Johnny Pearson.

Krystal Gorman, the victim's mother, testified that in September 2000, she lived in a trailer with the victim, the defendant, and her boyfriend, Johnny Pearson. She said that Johnny Pearson was the forty-one-year-old brother of her mother's husband and that he was the defendant's uncle. She said that she usually took the victim with her when she went to work and that her mother would bring the victim home and watch her. She said that Johnny Pearson usually picked the victim up around 4:00 p.m. if he did not have to work late. She said that this routine varied only once, on September 21, 2000. She said that on that day, the defendant had lived with them for approximately one week. She said that it was between 2:30 and 3:00 p.m., and the defendant, who had recently awakened, was wearing a blue robe. She said that the victim was watching her favorite cartoon and wanted to stay home. She said that the defendant offered to watch the victim. She said that the victim was very close to the defendant and that she agreed to let him watch her. She said that when she left, the defendant and the victim were sitting on the couch together watching cartoons.

Ms. Gorman testified that it took her five to seven minutes to get to work. She said that five minutes after she arrived at work, she called her trailer to check on the victim but that no one answered. She said that she called back three to five minutes later and that the defendant said that he had been in the bathroom and could not get to the telephone when she had called before. She said that Johnny Pearson and the victim came to pick her up at 11:00 p.m. She said that the victim was fussier than usual but that she thought the victim was tired. She said that between September 21 and September 30, 2000, the victim had three or four wetting accidents. She said that the victim had been toilet trained for almost two years. She said that the victim also wet the bed on September 25 or 26, which was unusual. She said that the victim's birthday party was on September 30 and that the victim did not have any accidents after this.

Ms. Gorman testified that after September 21, the victim's relationship with the defendant changed. She said that when the defendant tried to help the victim put on a birthday hat at her party, the victim slapped the hat out of the defendant's hand, which was very unusual. She said that four to six days after September 21, Ms. Gorman and the defendant were cutting up and that the defendant touched Ms. Gorman. She said that the victim became very upset, began screaming "No,"

and told the defendant to stop. She said that the victim went into her bedroom, began kicking things and knocking things off her bed, and began hitting her bed. She said that the victim had never reacted like this before. She said that she did not notice any problems between the victim and Johnny Pearson after September 21.

Ms. Gorman testified that sometime after September 21, she told Johnny Pearson that if he and the defendant did not get jobs and help with the expenses that she would not continue to live with him. She said that she never raised this issue with the defendant. She said that the defendant and Johnny Pearson left unexpectedly on the night of October 31, 2000. She said that after a couple of days, she and the victim moved into her mother's trailer. She said that on November 7, 2000, she had a conversation with her mother and then spoke with the victim around 11:30 p.m. She said that at this point, the victim had been away from the defendant for seven days and living in Mrs. Pearson's trailer for five days. She said that she took the victim to the police department a short time after that conversation. She said that about two weeks after Johnny Pearson moved out, she began dating him again.

Ms. Gorman identified the defendant as the person who lived with her. She said that his hair, which was cut very short at the time of trial, was different at the time of the offense. She said that she did not remember if the defendant had facial hair in September 2000. She said that the victim called the defendant Marvin. On cross-examination, Ms. Gorman acknowledged that around the time of the offense, the defendant had a girlfriend with whom he spent a lot of time. She said that the defendant's girlfriend was in high school and lived in the trailer across from them. She said that no allegations had been made against Johnny Pearson.

Based upon this evidence, the jury convicted the defendant of rape of a child. The trial court sentenced the defendant as a child rapist to twenty-three years, nine months with 100% of the sentence to be served in the Department of Correction.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to establish that he was the perpetrator because the victim was unable to identify him at trial. He argues that all other evidence linking him to the crime was circumstantial and did not exclude every other reasonable hypothesis except that of his guilt. The state contends that the evidence is sufficient to show that the defendant is the perpetrator. We agree with the state.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984);

State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Any questions about the credibility of the witnesses were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

"Rape of a child is the unlawful sexual penetration of a victim by the defendant . . . if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). Penetration includes fellatio. Id. § 39-13-501(7). In the present case, the four-year-old victim testified that Marvin, with whom she lived, forced her to fellate him. The defendant asserts that the victim was unable to identify him in the courtroom despite him being a relative with whom she had lived for a period of time. He argues that although Charlotte Pearson and Krystal Gorman were able to provide circumstantial evidence that he was the perpetrator, their circumstantial evidence does not exclude every reasonable hypothesis save that of his guilt.

In order for a criminal conviction to rest exclusively upon circumstantial evidence, the circumstantial evidence "'must be not only consistent with the guilt of the accused but it must also be inconsistent with his [or her] innocence and must exclude every other reasonable theory or hypothesis except that of guilt.'" State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987) (quoting Pruitt v. State, 3 Tenn. Crim. App. 256, 267, 460 S.W.2d 385, 390 (1970)). Viewing the evidence in the light most favorable to the state, we conclude that the defendant was sufficiently identified as the perpetrator of the rape. The victim consistently testified that Marvin Brown, the only Marvin with whom she lived, was the perpetrator. The victim's grandmother and mother identified the defendant as the Marvin Brown who lived with the victim during September 2000. They both testified that the defendant was alone with the victim on the afternoon of September 21, 2000. Ms. Gorman testified that she left the victim watching cartoons with the defendant. The victim testified that she and Marvin were alone in the trailer watching cartoons when he pulled her into the bathroom and raped her. Finally, both Mrs. Pearson and Ms. Gorman testified that the defendant's appearance had changed from the way he looked at the time of the offense. In fact, Mrs. Pearson also testified that she did not recognize the defendant when she first entered the courtroom. The defendant challenges the sufficiency of the victim's identification of her attacker based upon his being her grandmother's husband's nephew and living with her for one and one-half months. These contentions go to the credibility of the victim's account, which is a matter for the finder of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987) (holding that the credibility of the witnesses and the weight to be given to their testimony are issues to be resolved by the trier of fact). The evidence is sufficient to identify the defendant as the perpetrator and to support his child rape conviction.

## II. SENTENCING

The defendant contends that his sentence is excessive because the trial court erroneously failed to apply two mitigating factors: that his actions neither caused nor threatened serious bodily injury and that he had a mental condition that significantly reduced his culpability for the offense. See Tenn. Code Ann. § 40-35-113(1), (8). Although the state concedes that the trial court could have applied mitigating factor (1), it contends that the defendant's sentence is appropriate. We affirm the sentence that the trial court imposed.

-5-

At the sentencing hearing, Judy Byrd testified that she worked for the Department of Probation and Parole and that she prepared the defendant's presentence report. She said that the victim impact statement written by the victim's mother reveals that the victim has lingering anxiety from the crime. She noted that as a juvenile, the defendant had violated the conditions of probation and had failed to complete the requirements of alternative sentencing. She said that he had been found guilty of child rape as a juvenile and that he had been released from custody for the juvenile child rape adjudication on September 14, 2000, a week before committing the present offense.

The defendant's presentence report reflects that the defendant graduated from high school with a special education diploma. He reported having no mental health problems and that he injured his back playing football. He reported working for Tankersley Concrete for four weeks in 1999, but the employer stated that he had worked only twenty-five hours in the first week of January 1999. The defendant also said that he had worked periodically for his stepfather since 1996. The defendant was convicted of shoplifting on March 12, 2001, and received a suspended sentence of eleven months, twenty-nine days and thirty days of supervised probation. He pled guilty to rape of a child at age seventeen and was sentenced to the Department of Children's Services until age nineteen. The report also reflects that he twice violated probation as a juvenile. The victim's mother reported that the victim had no physical injuries and had received no medical treatment. She stated that the victim had received counseling and that the victim feared going to the bathroom alone, being in a room by herself, staying with anyone other than her mother or grandmother, and the dark. She said that the victim cried easily and had experienced behavior problems, including bed wetting, nightmares, slapping, and back talking.

Elizabeth Rasori testified that she works for the Marshall County Juvenile Court and maintains the juvenile court clerk's records. She said that the defendant was seventeen and one-half years old when he committed rape of a child as a juvenile offender. She said that offense involved vaginal penetration of a twelve-year-old girl. She said that the defendant was in custody a little over one year for that offense. She said that he was also in custody for two years as a juvenile after being adjudicated guilty of theft of property valued under $500 and disorderly conduct.

Detective Carol Jean of the Lewisberg City Police Department testified that she was the lead investigator in this case and that she was in the courtroom speaking with the victim's family after the verdict. She said that the defendant took a few steps toward them and screamed, "I hope you all b**ches are happy." She acknowledged that the defendant had maintained that he was innocent through all the proceedings.

The defendant testified that he was nineteen years old and had lived with his mother before being incarcerated in this case. He said that he has a sixteen-year-old sister and that his father is deceased. He said that he has never been married and has no children. He denied lying about the length of time he had worked for Tankersley Concrete and said that he held this job while in school and had worked there after lunch. He admitted that he had been in trouble as a juvenile. He said that he had a problem with prescription drugs after he was prescribed Xanax for pain resulting from a football injury. He said that he smoked marijuana twice a month before he was arrested in this case.

He said that he did not associate with the people who sold him pills and marijuana and that he did not know their names.

The defendant testified that he was not guilty, that the witnesses against him had lied, and that he had been wrongly convicted. He said that he had never had the desire to commit the crime with which he was convicted and that it had never crossed his mind. He said that he made a comment to the victim's family after trial and that it relieved a lot of his stress. On cross-examination, he admitted that he lived in a trailer with the victim. He said that he did not recall baby-sitting the victim or being alone with her.

The trial court applied two enhancement factors and no mitigating factors. It applied enhancement factor (1), involving the defendant's previous history of criminal convictions or behavior, based upon the defendant's conviction for misdemeanor shoplifting after the present offense but did not give the factor great weight. See Tenn. Code Ann. § 40-35-114(1). It applied enhancement factor (20) for the defendant's adjudication of committing child rape as a juvenile, an offense that would have been a felony had the defendant been an adult. See id. § 40-35-114(20). It gave great weight to this factor because of its proximity in time and similarity in nature to the present offense. Based upon these factors, it sentenced the defendant to twenty-three years, nine months.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the
> final sentencing decision, identify the mitigating and enhancement
> factors found, state the specific facts supporting each enhancement
> factor found, and articulate how the mitigating and enhancement
> factors have been evaluated and balanced in determining the sentence.
> T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

The sentence to be imposed by the trial court for a Class A felony is presumptively the midpoint in the range when no enhancement or mitigating factors are present. Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Id. § 40-35-210(d)-(e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Id. § 40-35-210, Sentencing Commission Cmts.; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

The defendant contends that the trial court erroneously failed to apply mitigating factors (1) and (8). We note that the defendant did not argue these factors at the sentencing hearing but, instead, only asked the trial court to consider his age and physical stature in mitigation. He also failed to raise these factors before the trial court in his motion for a new trial or at the hearing relating to that motion. Typically, one may not present one argument for mitigation before the trial court and then change the basis for the argument on appeal. See State v. Miller, 668 S.W.2d 281, 285 (Tenn. 1984). Nevertheless, our de novo review of the record reveals that the sentence imposed by the trial court was proper.

The defendant contends that mitigating factor (1), that his "criminal conduct neither caused nor threatened serious bodily injury," applies in this case. Serious bodily injury involves "(A) a substantial risk of death; (B) protracted unconsciousness; (C) extreme physical pain; (D) protracted or obvious disfigurement; or (E) protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(34). Psychological problems can constitute serious bodily injury. State v. Smith, 910 S.W.2d 457, 461 (Tenn. Crim. App. 1995). In the present case, the victim's mother stated in the victim impact statement that the victim continued to experience fear and enuresis due to the rape. We believe that this evidence reveals that the defendant's criminal conduct at least threatened psychological problems. This factor is not applicable.

The defendant also contends that the trial court should have applied mitigating factor (8), that his mental condition significantly reduced his culpability for the crime, because he has a mental condition that compels him to perpetrate sexual offenses against children. In support of this argument, he argues only that he also committed the same offense as a juvenile and apparently failed to receive needed rehabilitative services. The record belies the application of this factor. The defendant reported having no mental problems in the presentence report. Also, at the sentencing hearing, he testified that he did not commit the present offense and the idea to do so would never

have entered his mind. The record contains no evidence that the defendant suffered from a mental illness compelling him to commit sexual offenses. This factor does not apply.

The trial court gave great weight to the application of enhancement factor (20). We note that it could have considered the defendant's illicit drug use along with his shoplifting conviction in applying enhancement factor (1). We affirm the trial court's imposition of a sentence of twenty-three years, nine months.

Based upon the foregoing and the record as a whole, we affirm the judgment of conviction.

_____
JOSEPH M. TIPTON, JUDGE